UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHRISTOPHER FITZPATRICK,

                           Plaintiff,

    v.

MIDLAND CREDIT MANAGEMENT, INC., *et al*.

                         Defendants.

No. 24-CV-8556 (KMK)

OPINION & ORDER

Appearances:

Christopher Fitzpatrick
New Windsor, NY
Pro se Plaintiff

Gregory E. Galterio, Esq.
Jaffe & Asher, LLP
New York, NY
*Counsel for Defendant Jaffe & Asher, LLP*

Robert Louis Arleo, Esq.
Robert L. Arleo, ESQ., P.C.
New York, NY
*Counsel for Defendant Selip & Stylianou, LLP*

Aaron R. Easley, Esq.
Sessions, Israel & Shartle, LLC
Flemington, NJ
*Counsel for Defendant Credence Resource Management, LLC*

Jay I. Brody, Esq.
Sessions, Israel & Shartle
New York, NY
*Counsel for Defendant Credence Resource Management, LLC*

KENNETH M. KARAS, United States District Judge:

Christopher Fitzpatrick ("Fitzpatrick" or "Plaintiff"), brings this Action against Midland Credit Management, Inc. ("Midland"), Jaffe & Asher, LLP ("Jaffe"), Selip & Stylianou, LLP ("Selip"), and Credence Resource Management, LLP ("Credence") (collectively, "Defendants"), alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq*. (*See* Compl. (Dkt. No. 1).) Before the Court are Jaffe, Selip, and Credence's Motions to Dismiss (collectively, the "Motions"). (*See generally* Jaffe Not. of Mot. to Dismiss ("Jaffe Not. of Mot.") (Dkt. No. 6-1); Credence Not. of Mot. to Dismiss ("Credence Not. of Mot.") (Dkt. No. 7); Selip Not. of Mot. to Dismiss ("Selip Not. of Mot.") (Dkt. No. 21).) For the following reasons, the Court grants the Motions.

I. Background

A. Factual Background

"In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "[A] defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the Pleading." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016). A court may "base[ ] its decision solely on the allegations of the complaint and the undisputed facts evidenced in the record." *Trustees of Upstate N.Y. Engineers Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566–67 (2d Cir. 2016). As such, the following facts are derived from the Complaint, (*see* Compl.), and the admissible evidence submitted by the Parties.

1. Allegations Against Jaffe

The Complaint alleges that on September 9, 2024, Jaffe filed a lawsuit against Plaintiff in Orange County Supreme Court, alleging an American Express debt of $8,970.62. (*See* Compl. ¶ 21.) On October 16, 2024, Jaffe sent Plaintiff a collection letter regarding the same debt. (*See id.* ¶ 22.) According to Plaintiff, the letter did not disclose the pending lawsuit, and thus the validation rights it provided were "meaningless." (*See id.* ¶¶ 23–24.)

2. Allegations Against Selip

The Complaint alleges that on August 14, 2024, Selip sent Plaintiff a collection letter regarding a Discover Bank debt in the amount of $6,977.08. (*See id.* ¶ 26.) Plaintiff alleges that although the letter "was sent on law firm letter head" and "list[ed] multiple attorneys," "upon information and belief," no attorney conducted a meaningful review of his account before sending the letter. (*See id.* ¶¶ 27–29.)

3. Allegations Against Credence

The Complaint alleges that Credence has been reporting an account on Plaintiff's credit reports with an incorrect opening date of January 5, 2024. (*See id.* ¶ 31.) Plaintiff alleges that this information is incorrect, misleading, and is a result of Credence's failure to ensure accuracy. (*See id.* ¶¶ 32–33.)

B. Procedural Background

The Complaint was filed on November 8, 2024. (*See generally* Compl.) On January 21, 2025, Jaffe filed its Motion to Dismiss and accompanying papers. (*See generally* First Mot. to Dismiss ("Jaffe Mem.") (Dkt. No. 6-8).) On January 21, 2025, Credence filed its Motion to Dismiss and accompanying papers. (*See generally* Credence Not. of Mot.; Credence Mem. of Law in Supp. Mot. to Dismiss ("Credence Mem.") (Dkt. No 8).) Plaintiff filed his Opposition to

both Motions on January 24, 2025. (*See generally* Pl. Opp. to Credence Mot. to Dismiss ("Pl-Credence Opp.") (Dkt. No. 11); Pl. Opp. to Jaffe Mem. to Dismiss ("Pl-Jaffe Mot.") (Dkt. No. 12).) On February 4, 2025, Credence filed its Reply. (*See generally* Credence Rep. in Supp. of Mot. to Dismiss ("Credence Rep.") (Dkt. No. 16).) On February 5, 2025, Jaffe filed its Reply. (*See generally* Jaffe Rep. in Supp. of Mot. to Dismiss ("Jaffe Rep.") (Dkt. No. 17).)

Pursuant to a briefing schedule issued by the Court, (*see* Dkt. No. 15), Selip filed its Motion and accompanying papers on March 10, 2025. (*See generally* Selip Not. of Mot.; Selip Mem. in Supp. Mot. to Dismiss ("Selip Mem.") (Dkt. No. 22).) On March 17, 2025, Plaintiff filed his Opposition. (*See generally* Pl. Opp. Selip Mot. to Dismiss ("Pl-Selip Opp.") (Dkt. No. 23).) On April 24, 2025, Selip filed its Reply. (*See generally* Selip Rep. in Supp. Mot. to Dismiss ("Selip Rep.") (Dkt. No. 24).)

## II. Discussion

### A. Standard of Review

"[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court sua sponte. If subject matter jurisdiction is lacking, the action must be dismissed." *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000); *see also Wells Fargo Bank v. 5615 Northern LLC*, No. 20-CV-2048, 2022 WL 15523689, at *3 (S.D.N.Y. Oct. 27, 2022) (citing *Lyndonville*). "A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (quotation marks omitted). "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl.*

*Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010); *see also United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (describing subject matter jurisdiction as the "threshold question" (quotation marks omitted)).

The Second Circuit has explained that a challenge to subject-matter jurisdiction pursuant to Rule 12(b)(1) may be facial or fact-based. *See Carter*, 822 F.3d at 56. When a defendant raises a facial challenge to standing based solely on the complaint and the documents attached to it, "the plaintiff has no evidentiary burden," *id.* (citing *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)), and a court must determine whether the plaintiff asserting standing "alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue," *id.* (alterations omitted) (quoting *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)). In making such a determination, a court must accept as true all allegations in the complaint and draw all inferences in the plaintiff's favor. *Id.* at 57. However, where a Rule 12(b)(1) motion is fact-based and a defendant proffers evidence outside the pleadings, a plaintiff must either come forward with controverting evidence or rest on the pleadings if the evidence offered by the defendant is immaterial. *See Katz v. Donna Karan Co.*, 872 F.3d 114, 119 (2d Cir. 2017). "If the extrinsic evidence presented by the defendant is material and controverted, the . . . [C]ourt must make findings of fact in aid of its decision as to standing." *Carter*, 822 F.3d at 57.

"Although courts hold pro se complaints to less stringent standards than formal pleadings drafted by lawyers," "pro se litigants" also "must establish subject-matter jurisdiction." *Caponetto v. Mullen*, No. 22-CV-10423, 2025 WL 2198927, at *4 (S.D.N.Y. Aug. 1, 2025*); see also Rimini v. J.P. Morgan Chase & Co.*, No. 21-Cv-7209, 2022 WL 4585651, at *3 (S.D.N.Y. Sept. 29, 2022) ("[D]espite the solicitous pleading standard, a pro se plaintiff must still show

5

facts establishing the Court[']s subject matter jurisdiction." (alteration in original) (quoting *Bravo v. U.S. Bank Nat'l Ass'n*, No. 12-CV-1183, 2013 WL 307824, at *1 (E.D.N.Y. Jan. 25, 2013))).

B. Analysis

"The Court begins and ends its analysis with standing." *Onaka v. Shiseido Americas Corp.*, No. 21-CV-10665, 2024 WL 1177976, at *2 (S.D.N.Y. Mar. 19, 2024). Each of the moving Defendants argues that Plaintiff has failed to allege standing for Article III purposes. (*See* Jaffe Mem. 7–8; Credence Mem 4–7; Selip Mem. 7– 12.) For the following reasons, the Court agrees.

Standing asks "whether the litigant is entitled to have the [C]ourt decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "This inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Id.*; *see also Alliance for Env't Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 n.6 (2d Cir. 2006) ("Although lack of Article III standing and subject matter jurisdiction are distinct concepts, Article III standing remains, as we have noted, a limitation on the authority of a federal court to exercise jurisdiction." (citation omitted)); *cf. Cortland St. Recovery Corp. v. Hellas Telecomms, S.a.r.l.*, 790 F.3d 411, 416–17 (2d Cir. 2015) ("A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it, such as when . . . the plaintiff lacks constitutional standing" (quotation marks and citation omitted)). "Constitutional standing refers to the requirement that parties suing in federal court establish that a 'Case' or 'Controversy' exists within the meaning of Article III of the United States Constitution." *Am.*

*Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 358 (2d Cir. 2016).  Constitutional standing requires:

> (1) that the plaintiff ha[s] suffered an "injury in fact"—that is, "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical,"; (2) that there is "a causal connection between the injury and the conduct" of which the plaintiff complains; and (3) that it is "likely . . . that the injury will be redressed by a favorable decision."

*Id.* (second alteration in original) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

While "Congress may enact legal prohibitions and obligations[,] . . . under Article III, an injury in law is not an injury in fact." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021). "Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue . . . ." *Id.* (emphasis in original).  "In the Second Circuit, '*Trans[U]nion* is the touchstone for determining . . . a concrete injury.'" *Kirk v. Am. Cruise Lines, Inc.*, No. 23-CV-1057, 2025 WL 2017057, at *4 (D. Conn. July 18, 2025) (quoting *Bohnak v. Marsh McLennan Cos., Inc.*, 79 F.4th 276, 283 (2d Cir. 2023)), *appeal filed,* No. 25-1891 (2d. Cir. Aug. 4, 2025.)

*TransUnion* describes two kinds of "concrete" harms:  those that are tangible and those that are intangible.  *TransUnion LLC*, 594 U.S. at 425 (noting that while "the most obvious" harms are "traditional tangible" harms, "[v]arious intangible harms can also be concrete."). Tangible harms generally "encompass physical or monetary injury to the plaintiff."  *Obstfeld v. Unifin, Inc.*, 774 F. Supp. 3d 497, 502 (E.D.N.Y. 2025) (quoting *TransUnion LLC*, 594 U.S. at 425); *see also Kirk*, 2025 WL 2017057, at *4 ("Tangible harms, such as physical and monetary harms, readily qualify as concrete injuries." (internal quotation marks and citations omitted)). "Intangible harms, such as 'reputational harms, disclosure of private information, and intrusion upon seclusion,' can also satisfy the concrete injury inquiry." *Kirk*, 2025 WL 2017057, at *4 (quoting *TransUnion LLC*, 594 U.S. at 425)).  "Chief among [such concrete intangible injuries]

7

are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Marsh & McLennan Agency LLC v. Williams*, No. 22-CV-8920, 2025 WL 1265817, at *7 (S.D.N.Y. Apr. 30, 2025) (quoting *TransUnion*, 594 U.S. at 425)). "Key to this inquiry is 'whether plaintiffs have identified a close historical or common-law analogue for their asserted injury.'" *Id*. (quoting *TransUnion*, 594 U.S. at 424).

    Here, Plaintiff alleges: (1) that Jaffe sent him a collection letter that failed to disclose a pending lawsuit regarding the same debt, (*see* Compl. ¶¶ 21–25); (2) that Selip sent him a letter which falsely implied that it had been reviewed by an attorney, causing him confusion, (*see* Compl. ¶¶ 26–30); (3) that Credence reported an account, and that its reporting contained incorrect information about the account's opening date, (*see* Compl. ¶¶ 31–33). The Court reviews each of these allegations to determine whether they appropriately allege concrete injury.

    Plaintiff alleges that Jaffe and Selip's collection letters (1) failed to disclose a pending lawsuit as to the same debt, and (2) falsely implied they had been reviewed by an attorney, respectively. The Court concludes that these allegations fail to allege an injury in fact sufficient to confer standing. Plaintiff does not allege that he suffered any monetary or physical injury as a result of Jaffe's or Selip's letters. (*See generally* Compl.) And while Plaintiff argues that Jaffe and Selip's conduct was injurious because it deliberately concealed material information in a manner that parallels the traditional torts of common law fraud and misrepresentation, courts in the Second Circuit have rejected similar arguments where the plaintiff failed to allege "some justifiable reliance on the misrepresentation or omission." *Tavor v. Troia*, No. 23-CV-7724, 2024 WL 360571, at *4 (E.D.N.Y. Jan. 31, 2024), *appeal withdrawn,* No. 24-625, 2024 WL 4026207 (2d Cir. June 20, 2024); *see also id*. (concluding that the plaintiff had failed to allege a concrete injury where he alleged received a letter from a debt collector that caused confusion);

8

*Kola v. Forster & Garbus LLP*, No. 19-CV-10496, 2021 WL 4135153, at *7 (S.D.N.Y. Sept. 10, 2021) (holding that "merely receiving a letter from a debt collector that was confusing or misleading . . . does not demonstrate a harm closely related to fraudulent or negligent misrepresentation—both of which require some form of reliance").

Plaintiff also argues that Jaffe's letter "caused an informational injury." (*See* Pl-Jaffe Opp. 3.) But "[w]hile [the] intangible harm[] of informational injury . . . may constitute a concrete harm for standing purposes, the informational injury must stem from a public disclosure law, and a plaintiff must identify 'downstream consequences' from failing to receive the required information." *Obstfeld*, 774 F. Supp. 3d at 503–04 (quoting *TransUnion*, 594 U.S. at 441–42). "The Second Circuit has held that to show 'downstream consequences' a plaintiff must show that he has 'an interest in using the information . . . beyond bringing [his] lawsuit." *Id.* (citing *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 444 (2d Cir. 2022)). Courts in the Second Circuit have concluded that where a plaintiff fails to allege "adverse effects" or "downstream consequences" from a collection letter, there is no "informational injury" sufficient to confer standing. *See, e.g., Tschoe v. Monarch Recovery Mgmt., Inc.*, No. 20-CV-7331, 2024 WL 2814270, at *5 (S.D.N.Y. May 31, 2024) (concluding that there was no informational injury sufficient to confer standing where the plaintiff had received a collection letter that caused confusion and emotional distress, but no other downstream consequences); *Rosenberg v. McCarthy, Burgess & Wolff, Inc.*, No. 21-CV-2199, 2022 WL 3030390, at *5 (E.D.N.Y. Aug. 1, 2022) (rejecting a plaintiff's claim that the confusion caused by an allegedly misleading letter was sufficient to confer standing under an informational injury theory).

As to Plaintiff's allegations against Selip, Plaintiff also appears to argue that an injury arises automatically where a defendant misleads a plaintiff into believing a debt collection action

meaningfully involves an attorney when, in fact, it does not. (*See* Pl-Selip Opp. 2–3.) But other courts facing similar "attorney involvement" claims have concluded that such claims are not sufficient, without more, to allege an injury in fact. *See Sali v. Zwanger & Pesiri Radiology Grp., LLP*, No. 19-CV-275, 2022 WL 17832857, at *2 (E.D.N.Y. Dec. 21, 2022) (noting that the court "easily conclude[d]" that an alleged violation of the FDCPA's "ban on false or misleading representations of attorney involvement" did not "without more, have a close historical or common-law analogue to a constitutionally sufficient concrete harm" (quotation marks omitted)); *Faherty v. Rubin & Rothman, LLC*, No. 21-CV-650, 2022 WL 1025958, at *4–5 (D. Conn. Apr. 6, 2022) (concluding that an alleged misrepresentation as to attorney involvement was insufficient, without more, to allege injury in fact); *Lee v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*, No. 21-CV-5649, 2022 WL 203677, at *1 (E.D.N.Y. Jan. 21, 2022) (concluding the plaintiff could not establish an injury in fact where they alleged a misrepresentation as to attorney involvement).

Finally, as to Plaintiff's allegation that Credence reported an account, and that its reporting contained incorrect information about the account's opening date, the Court also concludes that Plaintiff has failed to allege an injury in fact. Plaintiff argues that under *Transunion*, his allegations are sufficient to confer standing because Credence published false information to credit reporting agencies. (*See* Pl-Credence Opp. 2–3.) *TransUnion* involved a class of 8,185 plaintiffs who alleged that TransUnion, a credit reporting agency, had violated the Fair Credit Reporting Act ("FCRA") via its use of a system that had inaccurately flagged the plaintiffs' credit files as "potential match[es]" to persons identified as national security risks by the Treasury Department's Office of Foreign Assets Control ("OFAC"). *See TransUnion LLC*, 594 U.S. at 419–421. The Supreme Court ultimately bifurcated the class, finding that the 1,853

10

class members whose inaccurately flagged credit reports had been disseminated to third parties had standing, because they had suffered a harm "associated with the tort of defamation," and the 6,332 class members whose inaccurately flagged credit reports were never disseminated did not have standing, because "[p]ublication is essential to liability in a suit for defamation." *Id.* at 432–434 (quotation marks omitted).

Plaintiff argues that, like the 1,853 class members in *TransUnion* for whom the Supreme Court concluded there was standing, his information was "disseminated" to third parties—namely, credit reporting agencies. But courts have "held that dissemination of credit reports to traditional credit reporting agencies [is] 'not the type of [dissemination to] third parties contemplated by the Supreme Court in *TransUnion*,'" because the Supreme Court "clearly contemplated [dissemination to] potential creditors," rather than credit reporting agencies. *Biener v. Credit Control Servs., Inc.*, No. 21-CV-2809, 2023 WL 2504733, at *7 (S.D.N.Y. Mar. 14, 2023) (quoting *Spira v. Trans Union, LLC*, No. 21-CV-2367, 2022 WL 2819469, at *5 (S.D.N.Y. July 19, 2022)); *Campbell v. Portfolio Recovery Assocs.*, No. 21-CV-1322, 2022 WL 657225, at *2 (E.D.N.Y. Mar. 4, 2022) ("[T]he distribution of inaccurate information to a credit reporting agency, as opposed to a potential creditor, . . . does not constitute or cause concrete injury for standing purposes.").

\* \* \*

For the foregoing reasons, the Court concludes that the Plaintiff has not alleged a concrete injury sufficient to confer Article III standing. *See Adler v. Penn Credit Corp.*, No. 19-CV-7084, 2022 WL 744031, at *11 (S.D.N.Y. Mar. 11, 2022) ("As Plaintiff has not demonstrated any concrete injury sufficient to support standing under the Second Circuit's precedent . . . , the Court lacks subject matter jurisdiction over this Action."). Because the Court

11

determines that Plaintiff fails to allege standing, it does not address the underlying merits of his claims.  *See Barnes v. KOS, Inc.*, No. 23-CV-10104, 2025 WL 1928027, at *1 (S.D.N.Y. July 14, 2025) ("Having determined that the Plaintiffs lack standing, the Court does not reach the merits of their claims.").

### III. Conclusion

Accordingly, the moving Defendants' Motions are granted.  "[W]hen a case is dismissed for lack of federal subject matter jurisdiction, 'Article III deprives the court of the power to dismiss the case with prejudice.'"  *Biener,* 2023 WL 2504733 (S.D.N.Y. Mar. 14, 2023) (quoting *Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 121 (2d Cir. 2017)).  Therefore, dismissal of this action is without prejudice.  Plaintiff may file a second amended complaint within 30 days of the date of this Opinion & Order.  Failure to properly and timely amend will likely result in dismissal of the claims against Plaintiff with prejudice.

The Clerk of Court is respectfully directed to mail a copy of this Opinion to Plaintiff, and to terminate the pending motions (Dkt. Nos. 6, 7, 10, 21, 22).

SO ORDERED.

Dated:  September 23, 2025
        White Plains, New York

                                        KENNETH M. KARAS
                                        United States District Judge